1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3

THE UNITED STATES OF AMERICA, et rel.   ) No. 11 C 4458
4  KENNETH CONNER,                          )
                                            )
5                      Plaintiff,           )
                                            )
6              v.                           )
                                            )
7  PETHINAIDU VELUCHAMY, et al.,            ) September 22, 2014
                                            ) Chicago, Illinois
8                                           ) 9:00 a.m.
                       Defendants.          ) Status Hearing
9
                   TRANSCRIPT OF PROCEEDINGS
10       BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

11  APPEARANCES:

12  For the Plaintiff:      LAW OFFICE OF MATTHEW J. SULLIVAN,
                            LLC
13                          55 West Wacker Drive
                            Suite 1400
14                          Chicago, Illinois  60601
                            BY:  MR. MATTHEW J. SULLIVAN
15
     For the Government:     HON. ZACHARY T. FARDON
16                          United States Attorney, by
                            MR. JEFFREY M. HANSEN,
17                          Assistant United States Attorney
                            219 South Dearborn Street
18                          Suite 500
                            Chicago, Illinois  60604
19
     For Defendant Tucek:    TRESSLER SODERSTROM MALONEY &
20                          PRIESS, LLP
                            233 North Wacker Drive
21                          22nd Floor
                            Chicago, Illinois  60606-6399
22                          BY:  MR. JOHN P. MANIATIS

23          TRACEY DANA McCULLOUGH, CSR, RPR
                   Official Court Reporter
24              219 South Dearborn Street
                        Room 1426
25           Chicago, Illinois  60604
                   (312) 435-5570

1    APPEARANCES CONTINUED:

2

3    For Defendants Barth,          KATTEN & TEMPLE, LLP
     Benik, Murphy Pachoa,          542 South Dearborn Street
     and Regas:                     Suite 610
4                                    Chicago, Illinois  60605
                                     BY:  MS. NANCY ANNE TEMPLE
5

6    For the Adams                  FRANKLIN LAW GROUP
     Defendants:                    181 Waukegan Road
                                     Suite 205
7                                    Northfield, Illinois  60093
                                     BY:  MR. CRAIG M. CAPILLA
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE CLERK:  11 C 4458, Conner versus Veluchamy.

2              MR. MANIATIS:  Good morning, Your Honor.  John

3    Maniatis for defendant Ronald Tucek.

4              MR. SULLIVAN:  Matt Sullivan.  I represent the

5    relator Kenneth Conner.

6              MR. HANSEN:  Good morning, Your Honor.  Jeff Hansen

7    on behalf of the United States.

8              THE COURT:  Yes.

9              MS. TEMPLE:  Nancy Temple for defendants Barth,

10   Benik, Murphy, Pacoha, and Regas.

11             MR. CAPILLA:  And good morning, Your Honor.  Craig

12   Capilla on behalf of the Adams defendants.

13             THE COURT:  All right.  Where are we on this case

14   now?

15             MR. SULLIVAN:  So this is actually I filed a motion

16   to withdraw in combination with my co-counsel Joe Gentleman.

17             THE COURT:  All right.

18             MR. SULLIVAN:  So there are two reasons --

19             THE COURT:  Even though, even though this -- and for

20   future reference on other cases, always motion the case up on

21   the motion date, and then I can deal with it on the status.  It

22   doesn't throw off our --

23             MR. SULLIVAN:  Oh, I'm sorry.

24             MS. TEMPLE:  If you'd like to know the status.

25             THE COURT:  But as to -- is there objection to the

1    motion to withdraw?

2              MS. TEMPLE:  Yes, Judge.

3              THE COURT:  All right.  Then why don't we hear the

4    status and then we get to the motion.

5              MS. TEMPLE:  Judge, we -- the plaintiff has yet to

6    produce a single document in this case.  There's a firm

7    discovery cutoff, as you may recall, of mid December.  He has

8    yet to be deposed.  We want to obviously get the records before

9    taking his deposition.  Early on in this case we had informed

10   Mr. Sullivan that -- I mean, this is a 2011 case.  The United

11   States had declined to intervene.  And we informed Mr. Sullivan

12   that there's no documents or facts or evidence that supports

13   the allegations.

14             For example, two of the allegedly fraudulent

15   appraisals that Adams Valuations supposedly did they were never

16   even retained, let alone performed any such appraisal for those

17   properties.  There was a separate appraiser.  So, you know,

18   obviously we've been interested in seeing what evidence

19   supports the allegations because our guys -- my clients, four

20   of them were employees and officers of the bank.  Two of them

21   were responsible for terminating the plaintiff's employment

22   and -- back in 2007.  So they are familiar with the plaintiff.

23             And I represent -- two of my clients are defendants

24   in an FDIC civil suit from -- against the D&O policy.  And so

25   Mr. Conner was deposed as a witness in that case.  Mr. Sullivan

1   represented him earlier this year in May, and in early July it

2   was wrapped up.  And it became evident that after that

3   deposition, he was asked about the allegations in this case,

4   that there was again still no evidence to support his

5   allegations.

6          So we are concerned.  This is -- these allegations in

7   this Qui Tam suit have had a devastating impact on all the

8   defendants.  We -- given the nature of the motion to dismiss,

9   you have to assume the allegations as true.  We did not prevail

10  primarily on those motions.  But it is a fee shifting

11  provision.  There's Section 28 U.S.C. Section 1927 issues we

12  had mentioned to Mr. Sullivan.  And, you know, we're concerned

13  about where we go from here if he is out and what happens to

14  the case.

15         MR. SULLIVAN:  Well, first of all, I'm very confident

16  in my conduct in this case.  I mean, in our complaints we've

17  been very clear about what evidence we have and what evidence

18  we don't have and where it comes from.  Mr. Conner was deposed

19  in the FDIC case.  That concluded in early July.  There were

20  documents in that case that supported some of his allegations.

21  There were documents that the FDIC didn't find.  So they don't

22  necessarily contradict his allegations, but they didn't find

23  documents to support certain of his allegations.

24         The FDIC called Mr. Conner because they believe he

25  supports their allegations in a case alleging negligence, not

1    deliberate conduct.  So they see him as a viable witness in

2    their case.  And I guess I feel like she's responding to my

3    motion to withdraw before I've presented it.  And the reason

4    I'm withdrawing doesn't have to do with the allegations in the

5    complaint not having any merit.  She said that I haven't

6    produced any documents yet.  They only served their discovery

7    requests in August.  I responded to them in writing on

8    September 8th.  We've never alleged --

9              THE COURT:  And now there's a pending request to

10   admit facts, is there not?

11             MR. SULLIVAN:  No.  We responded to the request to

12   admit facts.

13             THE COURT:  You responded to that?

14             MR. SULLIVAN:  They filed a motion to deem those

15   facts admitted.  I actually filed a response to that last night

16   because I figured that the person who responded to the -- or

17   who made the objections and actually drafted the response ought

18   to withdraw -- ought to respond to that before if Your Honor

19   grants me leave to withdraw from the case, you know, so that

20   Mr. Conner's not stuck responding to that with new counsel.

21   But I don't believe that motion has any merit.

22             THE COURT:  And who is new counsel?

23             MR. SULLIVAN:  There isn't new counsel yet.  He,

24   he -- I know he's --

25             THE COURT:  My point.

1           MR. SULLIVAN:  -- in serious talks with lawyers about

2    it, but --

3           THE COURT:  My point.  This matter has been going on

4    a long time with a lot, a lot of issues coming before me.  And

5    now we get to this point.  Go ahead and state your reason for

6    your motion to withdraw.

7           MR. SULLIVAN:  Well, so my co-counsel, lead counsel

8    in this case Joe Gentleman just had serious, serious health

9    issues over the past two months.  In fact, I haven't been able

10   to talk to him except by text message since before August 1st.

11   So on August 3rd I think it was he had emergency surgery to

12   remove an abscess from his throat and was out of commission,

13   and nonetheless tried to drive to Michigan to see his daughter

14   and got in a very serious car accident, you know, one car

15   accident where he drove off the road.  And, you know,

16   essentially pulled himself from the car before it burst into

17   flames according to -- these are secondhand from text messages,

18   but -- and was hospitalized for four days in Michigan and has

19   been out of commission.  So that happened in the beginning of

20   September.  So I haven't been able to talk to my co-counsel

21   since then.

22          Then the second thing is there's something very

23   specific that Mr. Conner and I had a conversation that he

24   promised he wouldn't do.  He went ahead and did it and didn't

25   tell me about it.  And, you know, his explanation basically is

1    you wouldn't have let me, let me.  So he failed to follow my

2    advice on something very specific.  And I just -- I no longer

3    have confidence in him as a client.  He showed up for one of

4    these depositions that we're talking about two hours late.  So

5    I've had some issues with him as a client that don't have to do

6    with the merits of the case.

7              In terms of producing documents, I mean, he's an

8    ex-employee of this company.  He has a few documents that he --

9    he performed a search for everything he had.  I've seen --

10             THE COURT:  Well, I want to stop a second.  Let's

11   deal with the motion to withdraw.

12             MR. SULLIVAN:  Yes.

13             THE COURT:  First of all, as to Mr. Gentleman, the

14   Court has no problem with him withdrawing because of health

15   reasons.  The Court still doesn't hear a good reason why you

16   should be withdrawing.

17             MR. CAPILLA:  Your Honor, may I briefly.  And with

18   respect to Mr. Gentleman, and -- you know, and by all means

19   understand, please, that we wish him a speedy recovery and that

20   sounds like a horrible thing.  We still object on those grounds

21   as well.  However, Mr. Gentleman had an associate or someone

22   covering for him in Rolling Meadows last week indicating that

23   he'd be back in business this week.  So --

24             THE COURT:  And where is your, where is your

25   information on that?

1          MR. CAPILLA:  I unfortunately did not provide proof

2    of that today.  However, if given the opportunity if we want to

3    come back and do this in 24 hours --

4          THE COURT:  Is this a case against your firm?  Or

5    where your firm was --

6          MR. CAPILLA:  No.  This was my -- my associate was

7    there on a traffic matter out in Rolling Meadows courthouse and

8    said, hey, he's going to be back this week.  So I don't know

9    what the health reason is.  So certainly we wish him a

10   speedy --

11         THE COURT:  Hold on a second.  What's your response?

12         MR. SULLIVAN:  I don't know about that.  I mean, like

13   I said, I haven't talked to the man since before August 1st.

14   So I've texted with him.  He says he's out of commission.  He's

15   had all these things happen.  But I've tried to call him.  I

16   mean to be frank about it, for the first three weeks of this I

17   didn't know what happened.  I knew he wasn't returning my phone

18   calls or e-mails.  And then I found out what happened.  And

19   then there was a second thing that happened after that, this

20   car accident.  So --

21         THE COURT:  Counsel, I'm going to pass this a second.

22   Have a seat.  I'm going to let the other people go.

23         MR. SULLIVAN:  Yes.

24         MR. CAPILLA:  Thank you, Judge.

25      (Whereupon, other matters were heard in open court.)

1     THE CLERK:  Recalling 11 C 4458, Conner versus
2     Veluchamy.
3     THE COURT:  Thank you for your patience, and
4     hopefully the sound is just a little clearer coming from the
5     bench.
6     All right.  Counsel for plaintiff, Mr. Sullivan, the
7     Court will give you the chance, and hopefully you've been able
8     to think about some of the statements that defense said and
9     address this motion to withdraw.  You're in front of Judge Cole
10    on the 30th I believe, is that correct?
11    MR. SULLIVAN:  Yes.
12    THE COURT:  All right.  Judge Cole has the discovery
13    matters there.  And it sounds like there is much more, and I
14    can hear a little bit or maybe not much more.  As defense
15    counsel may tell it, I'll hear more about the status on that.
16    But as to this Court making any rulings on what should be in
17    front of Judge Cole on the discovery matters, this Court's not
18    going to do.  This motion to withdraw, though, has had some
19    serious statements in support and then some very serious
20    statements opposed.  And I need you to address that.
21    MR. SULLIVAN:  Yes.  So let me -- I thought maybe the
22    best thing to do would be to provide you with sort of a
23    chronology of events over the summer.
24    THE COURT:  Well, and as you do that, and the Court
25    will let you do that, I am going to tell you at the close of

1    this you're going to have to prepare the Court -- there's got

2    to be some type of affidavit, some type of written statement or

3    record showing why physically medically Mr. Gentleman shouldn't

4    be a part of this case anymore, but proceed with your

5    chronology.

6          MR. SULLIVAN:  Yes.  Yes.  So, so in the spring you

7    ruled on their motions to dismiss and denied them.  We've been

8    in discovery in this case since then.  But since the FDIC

9    hasn't -- that's where most of the documents are.  They haven't

10   produced documents in this case yet.  On May 30th Mr. Conner

11   was deposed by the FDIC in their case against many of the same

12   defendants.  And subject to a protective order I saw some

13   documents in that case.  I'm not supposed to use them in this

14   case according to the protective order.

15         So at the deposition that took place, it took place

16   in two phases.  The first was in late May.  Mr. Conner showed

17   up a couple hours late for that deposition, but I found out

18   immediately prior to that deposition that the -- one of the

19   major allegations in this complaint, in Mr. Conner's complaint

20   has to do with Adams' appraisal of the Venturella property.

21   The FDIC has found another appraisal performed by a different

22   appraiser for the Venturella property, and there's some

23   documents where Mr. Conner criticizes that evaluation.

24         Now, Mr. Conner, I talked to him about this for

25   hours.  And he says there's another -- right.  Another

1    appraisal that Adams did, and he's a hundred percent confident

2    of that.  But one has to question why the FDIC hasn't found it

3    in that case.  So and understand that most likely --

4            THE COURT:  The Court thought you were giving me a

5    chronology.

6            MR. SULLIVAN:  So, so I learned that about May 30th.

7            THE COURT:  And, Counsel, I need a chronology as to

8    support your motion.

9            MR. SULLIVAN:  Yes.  No, I'm trying to explain why I

10   want to with --

11           THE COURT:  Well, no.  You're also trying to bring in

12   facts to have the Court look askance at the defense.  And the

13   Court understands that every opportunity for one side to skewer

14   the other side, lawyers take it.  But the Court needs relevant

15   information on what is leading up to the motion to withdraw for

16   you and your co-counsel.

17           MR. SULLIVAN:  Yes, so but I'm trying to explain

18   the -- so let me move forward to the continued second half of

19   his deposition.  I learned for the first time that my client

20   had published a book in the second half of his deposition.  And

21   so sometime a few weeks after that I read that book.  It

22   contains some allegations that I consider to be irresponsible

23   political allegations, you know, that tangentially relate to

24   Mutual Bank in this case.  My client attached the complaint

25   that I drafted to this book with these irresponsible

1    allegations in it.

2             Once I read the book, at that point I decided I

3    wanted to withdraw from this case.  I tried to talk to Mr.

4    Gentleman about it, who's lead counsel on the case.  I didn't

5    hear from him.  It turned out because he had emergency surgery

6    on his throat.  I didn't hear from him till late August, and he

7    got in another car accident that delayed this thing.  So the

8    primary reason, the original reason I wanted to withdraw from

9    this case is that Mr. Conner published a book that had some --

10    it doesn't have to do with the allegations in this complaint

11    except tangentially, but I think they're irresponsible

12    allegations.  And I guess I've lost confidence in my client

13    after reading that.

14             THE COURT:  And when was the book published?

15             MR. SULLIVAN:  The book was published in 2012

16    immediately before the presidential election.  I didn't find

17    out about it because when I -- I took this -- so let me, let me

18    explain myself.  I mean, I took this case.  I googled my client

19    to see what he -- if there was anything out there.  This wasn't

20    out there at the time.  I don't check every month to see if my

21    client has published a book without telling me.  It got brought

22    up in his -- counsel's cross-examination of him in a

23    deposition.  I was very surprised to learn that.  When I read

24    the book, I was very much displeased about what was in it.  At

25    that point --

1          THE COURT:  Have you discussed this issue with your

2    client?

3          MR. SULLIVAN:  Yes.

4          THE COURT:  And what is his position on your motion

5    to withdraw?

6          MR. SULLIVAN:  He said that he consents to the motion

7    to withdraw.  He understands why I'm angry with him about the

8    book, although he, he doesn't -- because he's not backing away

9    from what he said in the book, but he acknowledges that he

10   didn't do what he was supposed to do.

11         THE COURT:  All right.  Well, Counsel --

12         MR. SULLIVAN:  And he did it without telling me.

13         THE COURT:  All right.  And so you're stating now on

14   the record before it was that he was late coming to depositions

15   and --

16         MR. SULLIVAN:  Well, so I guess what I'm trying to

17   say is all these things together have caused me to lose some

18   confidence in my client.

19         THE COURT:  The Court didn't know that --

20         MR. SULLIVAN:  So they're cumulative in a way I guess

21   is the way I -- the reason I presented it the way it is is,

22   well, you know, the FDIC hasn't found the document that he said

23   should be there.  And now there's other plausible explanations

24   for why they haven't found it, but that's not good.  And then

25   his behavior and frankly the fact that he's making what seem to

1    be irresponsible allegations against somebody else is not good

2    either when I'm relying on what my client tells me to be the

3    truth subject to the investigation I've made.

4         But necessarily he's a former employee of the

5    company.  He doesn't have -- you don't take your employer's

6    documents with you.  So for good reason he doesn't have a lot

7    of documents that back up what he said.  And I've been

8    forthright about that in my complaints, that this is my

9    client's testimony.  And --

10        THE COURT:  Well, Counsel, I guess the other question

11   is if his behavior and his comments are such that cause you

12   grave concern, I don't know what else you've spoken to him, but

13   there are some other options here about whether this case

14   continues to be prosecuted.

15        MR. SULLIVAN:  Yes --

16        THE COURT:  Not just bailing and leaving it to go on.

17        MR. SULLIVAN:  I understand that, Your Honor.  What I

18   would say is the allegations in the book are different than the

19   allegations in the complaint.  They have a different target,

20   who happens to be the President of the United States.  But I

21   mean, it's a different thing.  It doesn't bear directly on the

22   truth of the case, and the truth of what he's told me

23   repeatedly.  And, by the way, I believe that he believes

24   everything he's told me.  And frankly he believes what he wrote

25   in the book, but I don't believe what he wrote in the book.

1          THE COURT:  All right.  Let me hear from counsel.

2          MS. TEMPLE:  Judge, yes, I mean, maybe it does make

3     sense for Mr. Sullivan to submit an affidavit and then the

4     defendants to respond, because I, I have not frankly had an

5     opportunity to research this directly.  But just to correct the

6     record, there is an allegation by Mr. Conner in our case that

7     there was a conspiracy between the president of Mutual Bank and

8     President Obama.  I asked him the basis for that allegation,

9     what facts he has to support it, and he said the president of

10    the bank Mr. Mahajan knows a lot of people and he thinks that

11    he donated to President Obama's campaign.

12          So the book about President Obama has to deal with --

13    in part with a loan transaction involving Mutual Bank that is

14    at issue in this case, so it's very relevant.  It sounds to me

15    like Mr. Sullivan doesn't believe in the allegations, but I

16    think we should follow a process and get this on the record.

17          MR. SULLIVAN:  There is no allegation with respect to

18    President Obama.

19          THE COURT:  All right.  That's -- evidently you need

20    to take another look at your complaint and then go ahead and

21    just file your affidavit.

22          MR. SULLIVAN:  Okay.  What subjects do you want the

23    affidavit to cover just to be clear?  Mr. Gentleman's health or

24    everything I've just discussed right now?

25          THE COURT:  Well, I mean, Gentleman's health has to

1    be documented, a medical -- if he's saying he wants out because

2    of a medical issue because he's not able to carry on, based on

3    the representations made by counsel in court here, the Court

4    believes you need to have some type of documentation that he's

5    medically unable.

6                MR. SULLIVAN:  Yes.

7                THE COURT:  And as to your affidavit, a motion to

8    withdraw should always be accompanied by an affidavit by

9    counsel saying why you cannot continue to serve this person.

10               MR. SULLIVAN:  Yes.

11               THE COURT:  And, you know, you're not the first

12   lawyer not to like his client.  You're not the first lawyer to

13   have a client lie to you or not -- or not show up someplace on

14   time.  And, somehow they get it back on track and go from

15   there.

16               MR. SULLIVAN:  And I want to be clear.  I don't know

17   that he is lying to me about this case.

18               THE COURT:  Whichever.  I mean, that -- you're saying

19   you don't necessarily have confidence in him.  You're not sure

20   about being able to believe him on a certain point now.  You're

21   saying that he's late.  You're saying that he disregards your

22   advice.  These are not oddities for the Court, and it happens

23   all the time.  And that's why I have such admiration for the

24   lawyers who come before me because they still vigorously

25   present their client's case despite what trials and travails

1    they may have with their client.  And it has to get to a really

2    bad point or something where their own license is risked

3    usually even before they withdraw or the client just wants them

4    to withdraw so bad.

5           So I need you to file those documents with the Court,

6    and I need your client in court on the next date.

7           MS. TEMPLE:  Yes.  And, by the way, I asked him to

8    come here today, and he said he'd be here.  He has a sheep

9    disorder that causes him to not make morning --

10          THE COURT:  Well, let him know that sleep disorder is

11   going to cost him his case.

12          MR. SULLIVAN:  Fine.

13          THE COURT:  If he doesn't show up on the next date,

14   not only will you be out, but his case will be gone.  Failure

15   to prosecute.  You understand?

16          MR. SULLIVAN:  I understand you perfectly.

17          THE COURT:  All right.  I'll set a two-week date.

18          MR. CAPILLA:  Your Honor, just briefly, if I may.  I

19   think -- and counsel may be diving into this as well.  We have

20   motioned up -- or noticed up, rather, for tomorrow I believe

21   counsel's motion regarding discovery matters.  I know you

22   referenced that already in relation to Judge Cole.

23          THE COURT:  Right.  Those will be stricken, so you

24   won't be here today.  Your next date in front of Judge Cole is

25   the 30th.  If you want, we can put all this over till the 30th.

1    You're here in the building anyway.  It shouldn't take -- I

2    mean, you should be able to get that affidavit since it's for

3    you, and let Mr. Gentleman know that if he wants to still be

4    out on this, that he'd better get those documents together

5    quickly.  And let your client know that he better be here.  And

6    what time can we fit them in, Mrs. Hunt, on the 30th?  What

7    time is with Judge Cole?  10?

8              MR. SULLIVAN:  I thought he usually is like 8:30,

9    like really early.

10             THE COURT:  He has --

11             MR. SULLIVAN:  Unless he moved it around that day.

12             THE COURT:  He stays away from the 9, 9:30.

13             THE CLERK:  They're at 8:30 with Judge Cole.

14             THE COURT:  All right.  8:30 with Judge Cole.  We'll

15   issue a minute order and so will Judge Cole.  We may do some

16   dancing around on who goes first.  All right.  Just because it

17   makes more sense not because -- if I was testifying to wisdom,

18   it would be him.  But I'm going to make sure that we get it

19   right as to which, which way we go.  You may not need to go to

20   Judge Cole first depending on what happens, so -- and again,

21   I'm not tolerating lateness.  I'll issue my order, if he

22   doesn't come in here.  All right.  Yes, Counsel.

23             MR. MANIATIS:  Your Honor, if I may, just to be

24   clear.  I apologize if I made an error in filing our motion

25   before this Court instead of in front of Judge Cole.  My

1  assumption based on the discussion this morning is that our

2  motion will be dealt with by Judge Cole going forward.

3          THE COURT:  Well, you have to strike it from here,

4  but you can go ahead and motion it up for the 30th.  Just do

5  it.  I mean, they know it's coming.  All right.  But it's got

6  to be -- you still have to go through the renoticing, yes.

7          MR. MANIATIS:  Fine.  Thank you.

8          THE COURT:  All right.

9          MR. SULLIVAN:  And, Judge, if I may just one more

10  question.  They're right that they have served discovery

11  requests.  And if this were the ordinary course of business,

12  over the next two weeks I'd be making a production to them.  Do

13  you want that to still happen, or do you want to focus on the

14  withdrawal issue?

15          THE COURT:  We have a week for the 30th.  The Court

16  would rather -- if you're going to stay in this, the Court

17  would rather let's deal with this on the 30th and find out

18  what's going on.  Okay.  All right.  And get that straightened

19  out.  And why waste time if Mr. Conner really doesn't want to

20  go forward with this.

21          MR. SULLIVAN:  Well, I think he does want to go

22  forward.  I do know that he's talking to other lawyers.

23          THE COURT:  He's going to have to show me.

24          MR. SULLIVAN:  I know because they're asking me for

25  documents and stuff, so ...

1          THE COURT:  He's going to have to show me.  And no,

2     it's not two weeks.  It's a week for this issue.

3          MR. SULLIVAN:  Yes.

4          THE COURT:  All right.

5          MR. SULLIVAN:  Yes.

6          THE COURT:  And then we'll deal with -- if depending

7     on how we set it up, then the Court may send you to Judge Cole

8     and you can continue your discovery and set up a time to do

9     your production and deal with the motions.  Okay.

10         MR. SULLIVAN:  Okay.

11         THE COURT:  All right.  I'll see you what time

12    again -- oh, we're going to give them the time.  All right.

13    Thank you.  The 30th.

14         MR. SULLIVAN:  Thank you, Your Honor.

15         MR. CAPILLA:  Thank you, Your Honor.

16         MR. HANSEN:  Thank you, Judge.

17         MR. MANIATIS:  Bye bye, Your Honor.

18         MS. TEMPLE:  Thanks, Judge.

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2              I HEREBY CERTIFY that the foregoing is a true,

3    correct and complete transcript of the proceedings had at the

4    hearing of the aforementioned cause on the day and date hereof.

5

6    /s/TRACEY D. McCULLOUGH              September 24, 2014

7    Official Court Reporter                    Date
     United States District Court
8    Northern District of Illinois
     Eastern Division
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25