UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* Kenneth Conner, | ) | |
| | ) | No. 11 C 4458 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Coleman |
| | ) | |
| PETHINAIDU VELUCHAMY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' STATUS REPORT

The United States of America, by Zachary T. Fardon, United States Attorney for the Northern District of Illinois, files this report on the status of the settlement agreements subject to defendant McCarthy's motion to enforce.

The United States would not approve the settlement agreements as originally proposed. The United States revised the original agreements, and those revisions were acceptable to relator Conner and defendants Adams, McCarty, and Tucek. *See* agreements attached.

The United States approves the proposed settlements as revised.

    Respectfully submitted,

    ZACHARY T. FARDON
    United States Attorney

    By: s/James M. Kuhn Sr.
        JAMES M. KUHN SR.
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-1877
        james.kuhn@usdoj.gov

# Settlement Agreements

# SETTLEMENT AGREEMENT BETWEEN
# RELATOR AND CERTAIN DEFENDANTS

## I. PARTIES

This Settlement Agreement is entered into between Kenneth Conner ("Relator"), and Ronald Tucek and Patrick McCarthy ("Settling Defendants"), all of whom are hereafter together referred to as "the Parties," through their authorized representatives.

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. The Settling Defendants are former directors of Mutual Bank in Harvey, Illinois, a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"), an agency of the United States Government, in exchange for periodic premiums paid to the FDIC by the Bank as required by law.

B. Relator contends that the officers and directors of Mutual Bank knowingly submitted periodic reports of its condition to the FDIC, on which the FDIC based its insurance risk assessments and the premiums for its insurance, which reports systematically underrepresented the risks of failure to which the Bank was subject ("the Covered Conduct").

C. Relator contends that the United States has certain civil claims against the Settling Defendants and others under the False Claims Act, 31 U.S.C. §§ 3729-3733, for the Covered Conduct, which resulted in the underpayment of the insurance premiums that the FDIC would have charged the Bank if it had known the true facts, and which further resulted in out-of-pocket losses to the FDIC in paying off insured depositors when the Bank failed and had to be closed down in July 2009.

D. Relator filed a <u>qui</u> <u>tam</u> complaint against the Settling Defendants and other former

officers and directors of Mutual Bank on June 30, 2011 in the United States District Court for the Northern District of Illinois ("the Court"), titled *United States ex rel. Kenneth Conner v. Pethnaidu Veluchamy, et al.,* Case No. 11-CV-4458 in said court (the "Qui Tam Action"). Relator filed amended complaints in the Qui Tam Action (which term, as used herein, includes the original and all amended complaints) on or about October 24, 2011 and May 8, 2014. On or about August 17, 2012, the United States declined to intervene in the Qui Tam Action, and the United States is not a party to this Settlement Agreement.

E. The Parties desire a final negotiated settlement and compromise of the claims against the Settling Defendants set forth in the Qui Tam Action.

F. The Settling Defendants deny the contentions of Relator as set forth in the Qui Tam Action and deny that they have, or that either of them has, any liability relating to these contentions and allegations. This Settlement Agreement does not constitute an admission of any liability or wrongful conduct on the part of the Settling Defendants.

G. In order to avoid the delay, uncertainty, inconvenience and expense of protracted litigation of these claims, the Parties reach a full and final settlement as set forth below.

**III. TERMS AND CONDITIONS**

NOW, THEREFORE, in consideration of the mutual promises, covenants, and obligations set forth below, and for good and valuable consideration as stated herein, the Parties agree as follows:

1. Within five (5) business days after execution of this Settlement Agreement and receiving notice that the United States has consented to this Settlement Agreement, whichever occurs later, each Settling Defendant shall pay to the United States the sum of $5,000.00, for a total of $10,000.00 (the "Settlement Amount"), by electronic funds transfer pursuant to written

instructions to be provided by the United States Department of Justice.

2. Within five (5) business days after execution of this Settlement Agreement and receiving notice that the United States has consented to this Settlement Agreement, whichever occurs later, the Settling Defendants shall remit by cashier's check, payable to Haley & Bilheimer, Attorneys at Law, the sum of $3,000.00 apiece, for a total of $6,000.00, in full payment of Relator's pro-rata costs and attorneys' fees, in accordance with the provisions of 31 U.S.C. § 3730 (d) (2) and (d) (4).

3. Within five (5) business days of the payments made by the Settling Defendants under paragraphs 1 and 2, Relator's attorneys will file with the Court a Request that all claims asserted against the Settling Defendants in the Qui Tam Action be dismissed with prejudice as to Relator but without prejudice to the United States. The Parties agree to cooperate in obtaining the Court's approval (if necessary) of this Settlement Agreement and the dismissal of all claims asserted against the Settling Defendants in the Qui Tam Action with prejudice as to Relator but without prejudice to the United States.

4. The Relator agrees that, as to the Settling Defendants, this settlement is fair, adequate, and reasonable under all circumstances, and will not challenge the Settlement Agreement pursuant to 31 U.S.C. § 3730(c)(2)(B), and expressly waives the opportunity for a hearing on any such objection, pursuant to 31 U.S.C. § 3730(c)(2)(B).

5. Subject to the exceptions in Paragraph 6 below, in consideration of the obligations of the Settling Defendants set forth in this Settlement Agreement, conditioned upon their payment in full of the Settlement Amount, Relator releases the Settling Defendants, jointly and severally, from any claim Relator has or may have against the Settling Defendants under the False Claims Act, 31 U.S.C. §§ 3729-3733, for the conduct alleged in the Qui Tam Action.

6. Notwithstanding any term of this Settlement Agreement, specifically reserved and excluded from the scope and terms of this Settlement Agreement as to any entity or person (including without limitation the Settling Defendants) are any and all claims of the United States, which is not a party to this Settlement Agreement. These reserved and excluded claims of the United States include but are not limited to any civil, criminal, or administrative liability related to the conduct alleged in the Qui Tam Action, and any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code).

7. In consideration of the obligations of Relator set forth in this Settlement Agreement, each Settling Defendant, on behalf of himself, his agents, successors and assigns, fully and finally releases, acquits, waives, and forever discharges Relator, his successors and assigns, agents and attorneys, from any and all rights, claims, expenses, debts, liabilities, demands, obligations, costs, damages, injuries, actions and causes of action of every nature, whether known or unknown, suspected or unsuspected, in law or equity, arising from his bringing the Qui Tam Action.

8. Each Settling Defendant fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which such Settling Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the conduct alleged in the Qui tam Action and the United States' investigation and prosecution thereof.

9. This Settlement Agreement does not resolve the issue of the share, if any, that Relator will receive of the proceeds of this Settlement Agreement pursuant to 31 U.S.C. § 3730(d). That issue will be resolved through negotiations between Relator and the United States, and if necessary, through application to the Court.

10. This Settlement Agreement is intended to be for the benefit of the Parties and the United States, only, and by this instrument the Parties do not release any claims against any other person or entity.

11. The Parties and their respective counsel agree to maintain in confidence and not to disclose the terms of this Settlement Agreement, except to the extent required by law or lawful court order. The Parties agree that this provision does not restrict the United States in any way, and the Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

12. Each Settling Defendant expressly warrants that he has reviewed his financial situation and that he is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and will not become insolvent as a result of the payment obligations to the United States and Relator set forth in this Settlement Agreement. Further, the Parties expressly warrant that, in evaluating whether to execute this Settlement Agreement, the Parties (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to each Settling Defendant, within the meaning of 11 U.S.C. 547(c)(1), and (b) have concluded that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties expressly warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which either of the Settling Defendants was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

13. Each party to this Settlement Agreement will bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this

Agreement except that Relator's attorneys' fees and costs are governed by 31 U.S.C. § 3730(d).

14. Each party to this Settlement Agreement represents that this Settlement Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

15. This Settlement Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Settlement Agreement will be the United States District Court for the Northern District of Illinois.

16. This Settlement Agreement constitutes the complete agreement between the Parties. This Settlement Agreement may not be amended except by written consent of each of the Parties.

17. This Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

18. This Settlement Agreement is binding on the Parties, their transferees, heirs, successors and assigns.

19. This Settlement Agreement is subject in its entirety to the consent of the United States and, if necessary, the approval of the Court. In the event the United States does not consent to this Settlement Agreement, or if the Court rejects the Settlement Agreement or otherwise does not dismiss all claims asserted against the Settling Defendants in the Qui Tam Action in accordance with paragraph 3 above, the Parties agree to cooperate and work together to achieve a version of it acceptable to the United States and the Court.

IN WITNESS WHEREOF, the Parties have hereunto set their hands as of the day and year indicated below.

**RELATOR**                                         **SETTLING DEFENDANTS**

_____       _____
**Kenneth Conner**                                 **Patrick McCarthy**

                                                                        _____
                                                                        **Ronald Tucek**

**[NOTE: PARTIES TO ADD SIGNATURE LINES FOR THEIR RESPECTIVE COUNSEL]**

# SETTLEMENT AGREEMENT BETWEEN RELATOR AND CERTAIN DEFENDANTS

## I. PARTIES

This Settlement Agreement is entered into between Kenneth Conner ("Relator"), Douglas Adams and Adams Valuation Corporation ("Settling Defendants"), all of whom are hereafter together referred to as "the Parties," through their authorized representatives.

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. The Settling Defendants from time to time performed real estate appraisals for Mutual Bank in Harvey, Illinois, a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"), an agency of the United States Government, in exchange for periodic premiums paid to the FDIC by the Bank as required by law.

B. Relator contends that the officers and directors of Mutual Bank knowingly collaborated with the Settling Defendants to inflate the values of certain properties which the latter appraised, in order that the loan-to-value ratios for those properties would not appear as high and as risky as they in fact were, so that the periodic reports of the Bank's condition submitted to the FDIC, on which the FDIC based its insurance risk assessments and the premiums for its insurance, could continually and systematically underrepresent the risks of failure to which the Bank was subject ("the Covered Conduct").

C. Relator contends that the United States has certain civil claims against the Settling Defendants and others under the False Claims Act, 31 U.S.C. §§ 3729-3733, for the Covered Conduct, which resulted in the underpayment of the insurance premiums that the FDIC would have charged the Bank if it had known the true facts, and which further resulted in out-of-pocket losses

to the FDIC in paying off insured depositors when the Bank failed and had to be closed down in July 2009.

D. Relator filed a qui tam complaint against the Settling Defendants and certain former officers and directors of Mutual Bank on June 30, 2011 in the United States District Court for the Northern District of Illinois ("the Court"), titled *United States ex rel. Kenneth Conner v. Pethnaidu Veluchamy, et al.,* Case No. 11-CV-4458 in said court (the "Qui Tam Action"). Relator filed amended complaints in the Qui Tam Action (which term, as used herein, includes the original and all amended complaints) on or about October 24, 2011 and May 8, 2014. On or about August 17, 2012, the United States declined to intervene in the Qui Tam Action, and the United States is not a party to this Settlement Agreement.

E. The Parties desire a final negotiated settlement and compromise of the claims against the Settling Defendants made in the Qui Tam Action.

F. The Settling Defendants deny the contentions of Relator as set forth in the Qui Tam Action and deny that they have, or that either of them has, any liability relating to these contentions and allegations. This Settlement Agreement does not constitute an admission of any liability or wrongful conduct on the part of the Settling Defendants.

G. In order to avoid the delay, uncertainty, inconvenience and expense of protracted litigation of these claims, the Parties reach a full and final settlement as set forth below.

**III. TERMS AND CONDITIONS**

NOW, THEREFORE, in consideration of the mutual promises, covenants, and obligations set forth below, and for good and valuable consideration as stated herein, the Parties agree as follows:

1. Within five (5) business days after execution of this Settlement Agreement and

receiving notice that the United States has consented to this Settlement Agreement, whichever occurs later, the Settling Defendants shall pay to the United States the sum of $5,000.00 (the "Settlement Amount"), by electronic funds transfer pursuant to written instructions to be provided by the United States Department of Justice.

2. Within five (5) business days after execution of this Settlement Agreement and receiving notice that the United States has consented to this Settlement Agreement, whichever occurs later, the Settling Defendants shall remit by cashier's check, payable to Haley & Bilheimer, Attorneys at Law, the sum of $3,000.00, in full payment of Relator's pro-rata costs and attorneys' fees, in accordance with the provisions of 31 U.S.C. § 3730 (d) (2) and (d) (4).

3. Within five (5) business days of the payments made by the Settling Defendants under paragraphs 1 and 2, Relator's attorneys will file with the Court a Request that all claims asserted against the Settling Defendants in the Qui Tam Action be dismissed with prejudice as to Relator but without prejudice to the United States. The Parties agree to cooperate in obtaining the Court's approval (if necessary) of this Settlement Agreement and the dismissal of all claims asserted against the Settling Defendants in the Qui Tam Action with prejudice as to Relator but without prejudice to the United States.

4. The Relator agrees that, as to the Settling Defendants, this settlement is fair, adequate, and reasonable under all circumstances, and will not challenge the Settlement Agreement pursuant to 31 U.S.C. § 3730(c)(2)(B), and expressly waives the opportunity for a hearing on any such objection, pursuant to 31 U.S.C. § 3730(c)(2)(B).

5. Subject to the exceptions in Paragraph 6 below, in consideration of the obligations of the Settling Defendants set forth in this Settlement Agreement, conditioned upon their payment in full of the Settlement Amount, Relator releases the Settling Defendants, jointly and severally, from

any claim Relator has or may have against the Settling Defendants under the False Claims Act, 31 U.S.C. §§ 3729-3733, for the conduct alleged in the Qui Tam Action.

6. Notwithstanding any term of this Settlement Agreement, specifically reserved and excluded from the scope and terms of this Settlement Agreement as to any entity or person (including without limitation the Settling Defendants) are any and all claims of the United States, which is not a party to this Settlement Agreement. These reserved and excluded claims of the United States include but are not limited to any civil, criminal, or administrative liability related to the conduct alleged in the Qui Tam Action, and any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code).

7. In consideration of the obligations of Relator set forth in this Settlement Agreement, each Settling Defendant, on behalf of himself, his agents, successors and assigns, fully and finally releases, acquits, waives, and forever discharges Relator, his successors and assigns, agents and attorneys, from any and all rights, claims, expenses, debts, liabilities, demands, obligations, costs, damages, injuries, actions and causes of action of every nature, whether known or unknown, suspected or unsuspected, in law or equity, arising from his bringing the Qui Tam Action.

8. Each Settling Defendant fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which such Settling Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the conduct alleged in the Qui tam Action and the United States' investigation and prosecution thereof.

9. This Settlement Agreement does not resolve the issue of the share, if any, that Relator will receive of the proceeds of this Settlement Agreement pursuant to 31 U.S.C. § 3730(d). That

issue will be resolved through negotiations between Relator and the United States, and if necessary, through application to the Court.

10. This Settlement Agreement is intended to be for the benefit of the Parties and the United States, only, and by this instrument the Parties do not release any claims against any other person or entity.

11. The Parties and their respective counsel agree to maintain in confidence and not to disclose the terms of this Settlement Agreement, except to the extent required by law or lawful court order. The Parties agree that this provision does not restrict the United States in any way, and the Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

12. The Settling Defendants expressly warrant that they have reviewed their financial situation and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and will not become insolvent as a result of the payment obligations to the United States and Relator set forth in this Settlement Agreement. Further, the Parties expressly warrant that, in evaluating whether to execute this Settlement Agreement, the Parties (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to each Settling Defendant, within the meaning of 11 U.S.C. 547(c)(1), and (b) have concluded that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties expressly warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which either of the Settling Defendants was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

13. Each party to this Settlement Agreement will bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement except that Relator's attorneys' fees and costs are governed by 31 U.S.C. § 3730(d).

14. Each party to this Settlement Agreement represents that this Settlement Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

15. This Settlement Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Settlement Agreement will be the United States District Court for the Northern District of Illinois.

16. This Settlement Agreement constitutes the complete agreement between the Parties. This Settlement Agreement may not be amended except by written consent of each of the Parties.

17. This Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

18. This Settlement Agreement is binding on the Parties, their transferees, heirs, successors and assigns.

19. This Settlement Agreement is subject in its entirety to the consent of the United States and, if necessary, the approval of the Court. In the event the United States does not consent to this Settlement Agreement, or if the Court rejects the Settlement Agreement or otherwise does not dismiss all claims asserted against the Settling Defendants in the Qui Tam Action in accordance with paragraph 3 above, the Parties agree to cooperate and work together to achieve a version of it acceptable to the United States and the Court.

IN WITNESS WHEREOF, the Parties have hereunto set their hands as of the day and year indicated below.

**RELATOR**                                                        **SETTLING DEFENDANTS**

                                                                                              **Adams Valuation Corporation**

_____             _____
**Kenneth Conner**                                           **By: Douglas Adams**

                                                                   _____
                                                                   **Douglas Adams, individually**

**[NOTE: PARTIES TO ADD SIGNATURE LINES FOR THEIR RESPECTIVE COUNSEL]**